UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARLINA J.-R.,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

CASE NO. C19-5477-BAT

**ORDER REVERSING AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS**

Plaintiff Marlina J.-R. seeks review of the denial of her applications for Supplemental Security Income and Disability Insurance Benefits. She contends the ALJ erred by rejecting her testimony and the opinions of examining psychologists and a state agency consultant, finding her only moderately limited in her ability to adapt or manage herself, and rejecting the lay witness evidence. Dkt. 12. The Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## DISCUSSION

**A.**     **Plaintiff's testimony**

Plaintiff argues that the ALJ erred by rejecting her testimony without providing valid reasons. Dkt. 12 at 3. Where, as here, the ALJ does not find that the claimant was malingering, the ALJ must give clear and convincing reasons to reject her testimony. *See Vertigan v. Halter*,

260 F.3d 1044, 1049 (9th Cir. 2001). An ALJ does this by making specific findings supported by substantial evidence. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996).

The ALJ found that while the record showed that plaintiff, whose medically determinable severe impairments are bulimia nervosa, anorexia nervosa, posttraumatic stress disorder (PTSD), depressive disorder, anxiety disorder, and bipolar disorder, "experienced substantial mental distress and symptoms during various periods," it did not show that "these complications" lasted for a continuous period of 12 months or longer. Tr. 22. Specifically, the ALJ found that plaintiff's psychological complications primarily occurred between July 8, 2015, the alleged onset date, and spring of 2016, when the record provides substantial evidence of recovery, and during a recurrence of acute distress in May and June 2017, after which the record described good recovery in August and September 2017. Tr. 23. The ALJ thus concluded that plaintiff's most severe symptoms did not meet the durational requirements of 12 consecutive months or longer for a finding of disability. *Id.*

Plaintiff asserts that the ALJ appeared to accept her complaints as consistent with the record during the months he described as periods of "substantial mental distress" and "acute distress," but rejected her testimony because her symptoms were not identical in their severity from month to month, a reason she argues is neither clear nor convincing. Dkt. 12 at 4. The court agrees.

The Ninth Circuit has held that in the context of mental health issues, it is error to reject a claimant's testimony "merely because symptoms wax and wane in the course of treatment." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). This is because cycles of improvement

and debilitating symptoms are common in the context of severe mental impairments. *Id.* For this reason, "it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Id.* Instead, the ALJ must take care to interpret reports of "improvement" within the context of the claimant's overall well-being and the nature of her symptoms. The ALJ may not simply interpret reports of "improvement" in mental health symptoms to mean the impairments no longer seriously affect the claimant's ability to function in a workplace, particularly where the "improvement" takes place in the context of ongoing treatment and limiting environmental stressors. *Id.*

The ALJ here did precisely what *Garrison* proscribes. The ALJ accepted plaintiff's testimony about the nature and severity of her symptoms during periods of substantial mental distress but rejected it as inconsistent with the evidence during what the ALJ found to be periods of improvement. In so doing, the ALJ failed to consider the cyclical nature of plaintiff's mental impairments, the nature of reports of improvement within the context of the course of plaintiff's symptoms and treatment, and the fact that even during her periods of "improvement," plaintiff was undergoing treatment and restricting her exposure to environmental stressors.

For example, during the period of improvement from spring 2016 until April 2017, the ALJ noted plaintiff's November 2016 statement that she was not purging more than once every two weeks, which the ALJ found significant improvement from her hearing testimony that she was purging 10 times per day.[1] Tr. 22. The ALJ also noted reports from plaintiff and her providers that her mood was improving and/or stable with medication. *Id.* But the ALJ did not

---

[1] Plaintiff testified that she was purging around 10 times per day before entering inpatient treatment, and once per week at the time of the hearing. Tr. 66.

ORDER REVERSING AND REMANDING FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 3

consider these reports within the context of her overall well-being, the nature of her symptoms, and her ongoing treatment.

Similarly, the ALJ noted reports from August 2017 that plaintiff was "doing well in therapy" after her discharge from inpatient treatment, along with plaintiff's statements that her medications were helping and her anxiety was "manageable." Tr. 23. But again, the ALJ did not consider the fact that plaintiff left inpatient treatment only because her insurance would not cover a longer stay and when she left, she transitioned to intensive, daily outpatient treatment and mental health counseling.

Here, as in *Garrison*, the ALJ improperly singled out two periods of temporary well-being and relied on those instances to discredit plaintiff. This was not a clear or convincing reason to reject plaintiff's testimony. The ALJ gave no other reason to reject plaintiff's testimony, and indeed seemed to accept her testimony that her symptoms were debilitating during the periods of "severe" symptoms. The ALJ erred in rejecting her testimony.

**B.    Medical opinions**

Plaintiff argues that the ALJ erred in evaluating the opinions of examining doctors Dan Neims, Psy.D., and Keri Tarantino, Psy.D., and consulting doctor Kent Reade, Ph.D. Dkt. 12 at 9-12. In general, the ALJ must give specific and legitimate reasons for rejecting an examining doctor's opinion that is contradicted by another doctor, and clear and convincing reasons for rejecting an examining doctor's uncontradicted opinion. *Lester*, 81 F.3d at 830-31.

*1.    Dr. Neims*

Dr. Neims examined plaintiff in August 2016. Tr. 1180-99. He opined that she had marked limitations in her ability to adapt to changes in a work setting, make simple work-related decisions, communicate and perform effectively in a work setting, maintain appropriate behavior

in a work setting, and complete a normal work day and work week without interruptions from psychologically based symptoms, with moderate limitations in several other functional areas. Tr. 1182.

The ALJ gave this opinion little weight. The ALJ found that Dr. Neims failed to provide any supporting rationale or citations to accompany his checkbox opinions. Tr. 23. Plaintiff asserts that this finding is not factually accurate, pointing to the accompanying narrative report and mental status examination findings. Dkt. 12 at 10. Dr. Neims documented his clinical observations and his assessment of plaintiff's medical and mental health history, along with a narrative description of his mental status examination findings and the forms documenting these findings. Tr. 1184-95. He referred to these attachments in the form he completed. Tr. 1180. The ALJ's finding that Dr. Neims failed to support his opinion is unsupported by the record and not a legitimate reason to discount the opinion.

The ALJ also found that Dr. Neims' opinion of marked restrictions did not comport with plaintiff's treatment records from spring 2016 through April 2017, which the ALJ found to show conservative treatment, no acute distress, pretty-well controlled bulimia symptoms with reduced purging, and improvements with medication. Tr. 23. Plaintiff argues that for the same reasons it was improper to reject her testimony on this basis, it was improper to reject Dr. Neims' opinion based on this. Dkt. 12 at 11. The ALJ relied on his discussion of these treatment records in the context of plaintiff's testimony to reject Dr. Neims' opinion. And the court has found that the ALJ's assessment of the treatment records from this period failed to consider the context of plaintiff's overall well-being, the nature of her symptoms, and her ongoing treatment, and was contrary to *Garrison*. This assessment of the treatment records was not a legitimate reason to

reject Dr. Neims' opinion. The ALJ failed to give specific and legitimate reasons for rejecting Dr. Neims' opinion.

*2. Dr. Tarantino*

Dr. Tarantino examined plaintiff in December 2015. Tr. 1172-76. She opined that plaintiff had moderate to marked impairment in her ability to interact with co-workers and the public, to maintain regular attendance in the workplace, to complete a normal workday or work week without interruption from a psychiatric impairment, and to deal with the usual stress of a workplace if it involves being around other people. Tr. 1176.

The ALJ gave some weight to this opinion, finding that it accommodated plaintiff's longitudinal symptoms of binge eating, purging, mood swings, crying spells, fatigue, social isolation, hypervigilance, and panic attacks. Tr. 23. But the ALJ gave no further weight to the opinion because it was given at a time when plaintiff was experiencing substantial symptoms that later improved by spring of 2016. *Id.*

Plaintiff argues that the ALJ's assessment of this opinion again failed to fully and fairly describe plaintiff's treatment history. Dkt. 12 at 19. The ALJ again relied on the erroneous assessment of reports of improvement without considering the context of plaintiff's overall well-being, the nature of her symptoms, and her ongoing treatment, contrary to *Garrison*. This was not a legitimate reason to reject the opinion. The ALJ failed to give specific and legitimate reasons for rejecting Dr. Tarantino's opinion.

*3. Dr. Reade*

State agency consultant Dr. Reade completed a mental RFC assessment form in January 2016 in which he opined: "Claimant should avoid working with the public. Best is contact with a small number of coworkers and the [general public]. Supervisor criticism should be delivered in

a supportive manner." Tr. 185. The ALJ stated that the state consultants found that plaintiff "can have superficial contact with a small number of coworkers and the general public" and gave this opinion some weight, finding that it accommodated plaintiff's symptoms of reduced concentration, stress, social isolation, anxiety, mood swings, hypervigilance, and depression, but giving it no further weight because the consultants did not examine plaintiff and did not review the evidence during and after spring 2016, when the ALJ found substantial medical improvement. Tr. 23-24.

Plaintiff asserts that the ALJ failed to discuss Dr. Reade's opinion about plaintiff's sensitivity to supervisor criticism, which plaintiff argues is a distinct and separate limitation to those the ALJ addressed. Dkt. 12 at 12-13. The ALJ must explain why "significant, probative evidence has been rejected," and must explain why uncontroverted medical evidence is rejected. *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984). However, while the ALJ must "make fairly detailed findings in support of administrative decisions to permit courts to review those decisions intelligently," the ALJ "need not discuss all evidence presented." *Id.* at 1394-95. The court finds that the ALJ's failure to discuss this portion of Dr. Reade's opinion does not constitute a rejection of significant, probative evidence without explanation. Rather, this statement was one component of the social limitations Dr. Reads opined, which the ALJ considered generally. Nevertheless, given that the ALJ gave only partial weight to this opinion for the same reasons the court has rejected above, the ALJ should reevaluate it in light of the reevaluation of the nature and course of plaintiff's impairments and symptoms.

### C. Ability to adapt or manage oneself

Plaintiff argues that the ALJ erred in evaluating whether her eating disorders met or equaled listing 12.13, eating disorders. Dkt. 12 at 13. To meet or equal that listing, a claimant

must meet both the diagnostic criteria of paragraph A and the functional limitations of paragraph B. 20 C.F.R. pt. 404, subpt. P app. 1, § 12.13. To meet the paragraph B criteria, a claimant must have an extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.*

The ALJ found that plaintiff had moderate limitations in each of the four functional areas. Tr. 19-20. Plaintiff argues that the ALJ's finding that her eating disorders caused only moderate limitations in the area of adapting or managing herself was not a reasonable conclusion supported by substantial evidence. Dkt. 12 at 14. She asserts that the ALJ did not fairly or adequately characterize her eating disorders, their impact on her functioning, or the nature of her treatment. *Id.* at 14-15. She also asserts that her eating disorders seriously compromised her physical health, pointing to evidence that she was admitted to the hospital for an IV infusion of potassium necessitated by her purging and restricting food behaviors, she received a diagnosis of osteopenia during the relevant period, which demonstrates an impact on her bone health, and her lowest weight during the relevant period was 112 pounds, which places her BMI at 17.07, a level she asserts would meet the listing for weight loss due to a digestive disorder. *Id.* at 15.

The ALJ's finding that plaintiff's eating disorders caused only moderate limitations on her ability to adapt or manage herself suffers from the same defects identified above. The ALJ again relied on statements that she was "doing well" and improving with treatment and medication without considering the context of her overall well-being, the nature of her symptoms, and her ongoing treatment. Plaintiff asserts that if the ALJ had properly considered the evidence she identifies, he would have found an extreme limitation in this area, which would have resulted in a finding of disability at step three. Dkt. 12 at 16. Although the court cannot

direct the ALJ to make a specific finding on the level of limitation plaintiff's eating disorders cause, the court finds that the ALJ erred in evaluating the functional limitations plaintiff's eating disorders cause. The ALJ must reevaluate these limitations on remand.

### D. Lay witness testimony

Finally, plaintiff argues that the ALJ erred in rejecting the lay witness evidence from her boyfriend. Dkt. 12 at 16. Plaintiff's boyfriend completed a third-party function report in December 2015 that described limitations he observed in plaintiff's functioning. Tr. 416-23. The ALJ found that this report largely restated plaintiff's allegations and gave it little weight for the same reasons he rejected her testimony—that the allegations are not supported by the record and that he completed the statement at a time when plaintiff was experiencing significant emotional distress and does not reflect her improvement in spring 2016. Tr. 24. The ALJ must give specific, germane reasons for disregarding lay witness evidence. *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). The reasons the ALJ gave suffer from the defects identified above. The ALJ failed to give valid reasons to reject this statement.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ shall reevaluate plaintiff's subjective allegations, the opinions of Dr. Neims, Dr. Tarantino, and Dr. Reade, and the statement from her boyfriend. The ALJ shall also reevaluate the functional limitations caused by plaintiff's eating disorders and whether they meet or equal a listing at step three. And the ALJ shall further develop the record and redo the

remainder of the five-step disability evaluation process as the ALJ deems necessary and appropriate to make a new decision.

DATED this 16th day of December, 2019.

BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

ORDER REVERSING AND REMANDING FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 10